## WELKER *against* WELKER.

When the record and judgment of a justice of the peace is removed into the Common Pleas by a *certiorari*, and the plaintiff in error there suffers a non-suit, a *scire facias* will not lie by the defendant in error, to have execution for the amount of his judgment before the justice and costs: the record must be remitted to the justice to be proceeded in.

If a guardian obtains a judgment during his guardianship, he may have a *scire facias* to revive that judgment, and have execution thereof after the time for which he was appointed guardian has elapsed, although another guardian be appointed.

Error to the Common Pleas of *Westmoreland* county.

*Nicholas Long* guardian of the heirs of *Michael Welker*, deceased, obtained a judgment against *Jacob Welker* before a justice of the peace in 1813.   The defendant sued out a writ of *certiorari*, and upon the return of the record of the justice, failing to file exceptions, judgment of *non pros.* was entered, agreeably to the rules of court.   Upon this judgment of *non pros.* the plaintiff in this suit, *Nicholas Long* sued out a writ of *scire facias* to have execution of the amount of his judgment and costs.   It appeared by the records of the Orphans' Court that *Nicholas Long* had been appointed the guardian of *Welker's* children, "until they arrived to the age of fourteen years," and that after that period and before this writ issued another guardian had been appointed.   The defendant plead *"nul tiel record,"* and also specially, that after the non-suit was entered, and before the writ issued, the wards of the plaintiff arrived at the age of fourteen years, and another guardian was appointed over their persons and estates.   To this plea the plaintiff demurred, and the defendant joined in the demurrer.

Upon both issues the Court rendered a judgment for the plaintiff.

*Kuhns* and *J. B. Alexander* for plaintiff in error.

Two positions were contended for; 1st, That there was no judgment in the Common Please upon which a *scire facias* could be supported. 2d. If there was such a judgment, the *scire facias* could not be supported by the present plaintiff, whose interest was divested by the arrival of his wards at full age.

The record should have been remitted to the justice for execution, which can alone be granted by the court which rendered the judgment. 19 *Vin. A. B.*, 284.   4 *Com. Dig* 140.   1 *Lev.* 134. *Cowp.* 843.   2 *Ld. Raym.* 1417.   *Tidd. Prac.* 1007.   3 *Salk.* 320.   *Cro. Car.* 23.   1 *Ld. Raym.* 216.   If the plaintiff desired to proceed in the Common Pleas, he could only do so by a suit upon the recognizance. 1 *Wils.* 88.

It is a general rule that where the power granted has expired, either by its own limitation, by the happening of some contin

gency on which it was made to depend for its existence, or by a revocation, the power ceases, and no valid act can be done in pursuance of it. The appointment of a guardian over the person and estate of a minor, is no more than the creation of a power, for the purposes understood to belong to that trust, and those powers endure no longer than the trust itself continues.

The act of assembly of 1713, *section* 7, *Smith*, 84, authorizes the Orphans' Court to admit minors to make choice of guardians, to appoint guardians, and directs that such guardians as shall be appointed by the court, shall be allowed and received to prosecute and defend all actions relating to the orphans or minors. This right to prosecute and defend, cannot well be considered as extending beyond the time for which the appointment was made, because after that the office or trust itself, is at an end, and the right to sue, which is merely appurtenant to the office, must cease also.

But a question of a more practical nature arises in the case before the court. The guardian having obtained judgment during the time he had a right to prosecute, can he now, or can the ward, in the name of the guardian, proceed to execution? This is of some importance as regards the conduct of suits at law, and must be decided on legal principles.

Previously to the statute of 17 *Car.* 2. *ch.* 8, *Robts. Dig.* 369, which in section 2 provides: "Where any judgment after a verdict shall be had by or in the name of any executor or administrator, in such case an administrator *de bonis non* may sue forth a *scire facias*, and take execution upon such judgment." If an administrator had judgment and died, his executor could not sue execution of that judgment. Nor could an administrator *de bonis non* have a *scire facias* on a judgment obtained by the first administrator for a debt of the intestate. So also if administration be revoked, the administrator could not afterwards sue out execution on a judgment obtained by himself. *Brudnel's case*, 5 *Coke* 9. *Yaites* v. *Gough*, *Yelverton*, 33. *Barnhurst* v. *Yelverten*, *Yelverten*, 83. *Turner v. Davies*, 2 *Saund.* 148. 2 *Bac. Ab.* 723. This statute, then, being confined to judgments *after verdict* and to cases of *executors and administrators*; it does not extend to cases of guardian and ward, to suits by attorney, or in any way embrace matters *inter vivos*. 6 *Bac. Ab.* 112. *Atkins* v. *Gardner*, *Cro. Ja.* 159. 2 *Bac. Ab.* 724.

If however this action be not entirely at an end, but may yet be prosecuted to execution through the intervention of a *scire facias* and judgment thereon, it becomes material to inquire, by whom that *scire facias* may be sued out, or who may have execution.

It is true that the writ of *scire facias*, requiring a defendant to say why execution may not be made of a judgment against him,

(Welker *v.* Welker.)

must be founded on a record, for the judgment pre-supposes a record, and the rule of law is clear, that the *scire facias* must correspond with the record. But the rule itself, though founded on the record is granted on the suggestion that some fact, not apparent on the record, has occurred, without a legal decision on which no further proceeding can be had on the judgment. The facts suggested, are generally such as the death of the parties, the marriage of a *feme* party, the case of administrator *durante minoritate,* where the executor has since arrived at proper age to execute the will, and some others within the equity of the statute of 17 *Car.* 2.

Thus, if there be a judgment by an administrator, *durante minoritate,* the executor, after he arrives at full age, may have a *scire facias,* for he is privy to, and has an interest in, the judgment. 5 *Com. Dig.* 777. 6 *Bac. Ab.* 113. 2 *Bac. Ab.* 723.

But a *scire facias* does not lie by him who has no interest in *the thing* recovered, though there be privity. As on a judgment in favor of husband and wife, in right of the wife, and the wife die, the husband cannot have a *scire facias.* This, however, must mean, where the proceeding is in *rem,* because, if husband and wife have judgment for a debt due to the wife, and she dies, he may have execution for the debt, without letters of administration and *scire facias;* and this, on the principle that by obtaining the judgment during the coverture, he has changed the character of the property, and made it his own by conversion. 5 *Com. Dig.* 779. 2 *Com. Dig.* 82. 6 *Bac. Ab.* 116.

But if the wife were administratrix, and suit brought by her and her husband, *jure representationis,* and judgment, and she dies, the husband cannot proceed on this judgment as survivor. Letters of administration *de bonis non,* must be obtained, and a *scire facias* may then issue by the provisions of the statute. Here the husband was in privity with, and in form a party to the first judgment; but having no interest in it, he cannot have execution.

It is a settled principle, that wherever there is a change of parties by marriage, bankruptcy or death, whereby other persons become interested in the execution of the judgment, a *scire facias* is necessary, so as to make such new person a party to the judgment. Here, however, there is no change of parties to be helped by a *scire facias.* *Johnston* v. *Parmely,* 17 *Johns.* 271. If it appeared distinctly on the original record, that the authority of the trustee or agent over the matter in question, was limited to a certain time, as for a year, and that time had expired, it would be bold to contend that such agent could maintain a *scire facias quare executio non,* as having a legal control of the case. In this instance, however, the termination of the authority of the guardian, does not appear on the record of the original action; but it is introduced into the record by the plea, so as to put the court into posses-

(Welker *v*. Welker.)

sion of the fact. It is believed the decision upon it must be the same in the one case, that it would be in the other.

Wherever, then, the agency of a formal plaintiff has expired before execution executed, even though judgment has been rendered, the cause is ended, and cannot be proceeded in further, unless the case be provided for by statute; and the only remedy left to the party, is to bring a new action on the original contract. Although this is an old rule of law, yet its force has never been impugned; and we have an instance of its application in modern times, by a a very enlightened court, as shown in *Grant* v. *Chamberlin*, 4 *Mass. Rep.*, 611; where it was decided, that an administrator *de bonis non cum testamento annexo*, could not maintain a writ of error to reverse a judgment by the original executor, *and between the same parties*, in page 613; it was decided, that such former judgment by the executor was at an end, and could not be pleaded in bar to a new action on the original contract.

*Armstrong* for defendant in error.

The opinion of the court was delivered by

Gibson, C. J.—A *certiorari* to remove the judgment in an action before a justice of the peace, has long been considered with us to be in substance a writ of error, as the remedy would be in form, were the justice the judge of a court of record. In the King's Bench, the judgment of *non pros.* on a writ of error from the Common Pleas, is that the plaintiff in error take nothing by his writ, and that the defendant go without day as well as have execution of the judgment below for his debt or damages. In the Exchequer Chamber, or the House of Lords, the judgment is the same, except that there is no special award of execution; but the record is remitted to the King's Bench in order, as it is said, "that the plaintiff may have execution thereupon." But this special award of execution is unlike an affirmance, which is itself a judgment *quod recuperet;* for if it were not, it would be final, and it is certain that a second writ of error may issue, the difference being, that it does not suspend execution, which may issue in pursuance of the award of it, after the second writ has been obtained. The practice of our own court was, I believe, the same as that of the King's Bench, till the act of the 11th of March, 1809, which, in directing the record to be remitted for execution, produced no alteration in the nature of the judgment, though it changed the court by which it was to be executed. But it never was the practice, here or elsewhere, to treat a *non pros.* as a final judgment for the money; and in this respect there has been no difference between a writ of error and a *certiorari*. While in the case of an affirmance, the debt has been collected by an execution from the Com-

(Welker *v.* Welker.)

mon Pleas, the practice has been general, if not universal, to collect it, in the case of a *non pros.* by an execution from the justice.

On the remaining point, the argument of the plaintiff in error is constructed on an analogy from a case that bears little resemblance to the present    Assets which have not been brought into a course of administration, but remain unblended with the goods of the executor or administrator at his death, belong to the administrator *de bonis non,* whose title relates to the time of his predecessor's death. But to obtain the possession of assets, is not to administer them; and a suit, not founded on a new contract or duty to the administrator himself, being but an instrument of collection, vests no title in exclusion of that of the administrator *de bonis non,* who is entitled even to the fruit of a judgment in the actual possession of his predecessor at his death, whenever it can be specifically distinguished and ascertained, just as if it had been received in consequence of a voluntary payment or delivery.    It is for this reason that neither the representative of the first administrator, for want of title, nor the administrator *de bonis non,* for want of privity, can, by the common law, have execution of a judgment obtained by the executor or preceding administrator.    The inconvenience of this in practice, though incontestable in principle, called so loudly for redress, as to induce the legislature to interfere.    Why should we introduce the same inconvenience into actions by guardians?    Not for defect of title in the plaintiff on the record, after the attainment of the ward's age, for he remains the legal party, and perhaps the holder of the security; and even were he not beneficially interested, there would be no reason why he should not recover as a trustee. Indeed, the security being taken to him personally, it is not easy to see how the ward could recover in the name of any one else.    But he is in fact interested so far as regards the settlement of his account; and though he were released from responsibility, on account of the debt, before recovery had, yet, that would be a matter exclusively between the ward and himself.    The demurrer to the special plea, then, was well taken; but on the plea of *nul tiel* record, the judgment cannot be sustained.

.Judgment reversed.